cv0-119 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-90-119-CV





DAVE LEONARD CONSTRUCTION COMPANY,



 APPELLANT


vs.





DUO DISTRIBUTORS, INC.,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW OF TOM GREEN COUNTY



NO. 13,278-L, HONORABLE R. L. BLANN, JUDGE 



 





 Dave Leonard Construction Company appeals from a trial-court judgment awarding DUO Distributors, Inc., money damages for
breach of contract, and ordering that Leonard take nothing by its
counterclaim against DUO for breach of the same contract. We will
reverse DUO's judgment against Leonard and render judgment that DUO
take nothing. We will affirm that part of the judgment ordering
that Leonard take nothing by its counterclaim against DUO.



THE CONTROVERSY


 Leonard undertook, as general contractor, to erect a
heating and cooling plant for Angelo State University. The work
required the installation of skylights that Leonard contracted to
buy from DUO. DUO contracted, in turn, to purchase the skylights
from the manufacturer, Dawn Products.

 In June 1987, Leonard executed DUO's purchase-order form. 
In the space provided for a delivery date, the words "See schedule"
were inserted. The "job site" was specified as the place of
delivery. Subsequently, in November 1987, Leonard furnished DUO a
notice approving the specifications to which the skylights were to
be specially fabricated. The notice included the following
statement:



This material will be needed on the job no later than (as
scheduled). Failure to deliver material to the job by
the time stipulated will be grounds for cancellation.



 Dawn fabricated the skylights to Leonard's specifications
and they were delivered to the job site December 21, 1987. Leonard
did not then need them because construction had progressed only as
far as the basement of the plant. Leonard refused to accept the
skylights for want of storage space. The shipper stored them for
a period, then sold them to recover its costs.

 DUO sued in the present cause to recover the contract
price when Leonard refused to pay for the skylights. Leonard
counterclaimed for damages and attorney's fees based on DUO's
alleged failure to deliver the skylights according to the "job
schedule," that is to say, when the skylights were required for
incorporation in the work. 

 After a bench trial, the court below awarded DUO a
judgment for breach of contract, in the amount of $4,094.00 and
interest, while adjudging that Leonard take nothing by its
counterclaim. Leonard appeals.



DISCUSSION AND HOLDINGS


 The trial court filed findings of fact and conclusions of
law. These show that DUO's judgment rests on a premise that the
parties' contract did not specify a delivery date because Leonard
never supplied DUO a "job schedule." Thus, the law imputed to the
contract an agreement that the skylights would be delivered at a
"reasonable time." Tex. Bus. & Com. Code Ann. § 2.309(a) (1968). 
To recover on that premise, the burden lay upon DUO to prove
delivery at such a time. City of Fort Worth v. Rosedale Park
Apartments, 276 S.W.2d 395, 397 (Tex. Civ. App. 1955, writ ref'd).

 "What is a reasonable time for taking any action depends
on the nature, purpose and circumstances of such action," Tex. Bus.
& Com. Code Ann. § 1.204(b) (1968), and usages of trade may be
material and important in fixing a reasonable time in a particular
case. Id., comment 2. In the present case, the findings of fact
and conclusions of law set out a theory that a "reasonable time"
for delivery was "as soon as possible" under the following usages
of trade:

 1. The reference to a "job schedule" in the purchase
order and in the specifications-approval notice meant that delivery
was required "as soon as possible," when no such schedule was
supplied by Leonard.

 2. Once approval of specifications for skylights that
are to be manufactured to irregular dimensions is received, the
manufacturer is notified to proceed with production, and upon
completion of manufacture, to deliver the skylights to the
designated site.

 Among other points of error, Leonard contends on appeal
that numbers 1 and 2 above are not supported by evidence that is
legally or factually sufficient. We will sustain the contention
that the evidence is not legally sufficient, considering the
evidence in a light most favorable to DUO, and only the supporting
evidence and inferences therefrom, while ignoring all contrary
evidence and inferences. See W. Powers and J. Ratliff, Another
Look at "No Evidence" and "Insufficient Evidence," 69 Texas L. Rev.
515, 522 (1991); Calvert, "No Evidence" and "Insufficient Evidence"
Points of Error, 38 Texas L. Rev. 361, 364-65 (1960). We may not
hold the evidence "legally insufficient" unless we are persuaded
that a "vital fact may not reasonably be inferred from the meager
facts proved in the particular case." Calvert, at 365.

 We find in the statement of facts no evidence to support
an inference that the reference to a "job schedule" implied that
delivery must be "as soon as possible" because that is a "usage of
trade" within the meaning of Tex. Bus. & Com. Code Ann. § 1.205(b)
(1968). Nor can we find any evidence to support an inference that
a usage of trade requires delivery of specially manufactured items
as soon as approval of specifications is received.[1] DUO insists
the necessary inferences may be drawn from pages 83-86 of the
statement of facts, setting out part of the testimony on cross-examination of Leonard's witness Roberson. We find, however, that
such testimony tended to establish only the following propositions:

 1. It is important for Roberson's company (a supplier of
acoustical tile for ceilings) to know when it is "supposed to have
[the] stuff there at a job site" in order to avoid delaying the
construction project.

 2. It is important for suppliers like DUO and Roberson's
company to get "information" from the contractor in order that the
suppliers can do their jobs on time.

 3. If a contractor has stated that he is going to
construct the work by a schedule, and that he is going to send the
supplier a schedule, Roberson would expect to receive one; however,
it is not customary for suppliers to be furnished a schedule.

 4. In case of "a special order product" that would not
"fit any other project in the whole world," it would be
"reasonable" and "important" for the supplier to be told if the
product would not be needed for about 20 months when the entire
project covered two years.

 5. It is "not customary" for the contractor "to send a
schedule to the suppliers," and while Roberson would "suppose" it
is "normal" for a contractor to print "see schedule" on printed
forms like those used in the present case, and Roberson had seen
that done "a few times," it means "'see schedule' or 'find out
. . . when.'"

 Nothing in the foregoing tends logically to imply "any
practice or method of dealing having such regularity of observance
in a place, vocation or trade as to justify an expectation that it
will be observed with respect to the transaction in question." 
Tex. Bus. & Com. Code Ann. § 1.205(b). At best, Roberson's
testimony establishes only that delivery dates are important to
construction contractors and their suppliers alike, but it is not
customary for contractors to furnish job schedules to their
suppliers because they will inquire to "find out . . . when" their
items are to be delivered during the course of construction.

 We therefore sustain Leonard's second point of error, and
reverse the trial-court judgment insofar as it awards DUO damages
for breach of contract, rendering judgment that DUO take nothing by
its claim.

 Leonard also seeks nominal damages, for DUO's breach of
the contract, and attorney's fees based, evidently, on the
provisions of Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (1986). 
Regarding Leonard's claim for attorney's fees, we find in the
record no attempt to comply with the procedure established for
their recovery in § 38.002. We hold, therefore, that Leonard did
not establish a legal right to attorney's fees.

 Regarding Leonard's claim for nominal damages, for DUO's
technical breach of contract in delivering the skylights too early
in light of the job schedule, we find that Leonard waived its claim
of error because the record does not contain a finding or request
for a finding that DUO failed to deliver the skylights at a
reasonable time, a necessary element of Leonard's counterclaim that
DUO breached the contract. See Pinnacle Homes v. R. C. L. Offshore
Engineering, 640 S.W.2d 629, 630 (Tex. App. 1982, writ ref'd
n.r.e.); 4 McDonald, Texas Civil Practice, § 16.09, at 30 (rev. ed.
1984).

 In order to recover on the contract, Leonard was required
to prove affirmatively that DUO's delivery of the goods was
unreasonable. At trial, Leonard adduced evidence that the timing
of DUO's delivery of the skylights was inconsistent with the
industry custom in that regard. The record does not indicate,
however, that Leonard requested such a finding, and the trial court
found to the contrary. We do not believe that the fact that the
trial court found the delivery time to be reasonable somehow
relieved Leonard of its burden to seek a finding on
unreasonableness, a necessary element of its claim against DUO.

 We therefore affirm that part of the trial-court judgment
which denies Leonard recovery on its counterclaim.




 

 John Powers, Justice

[Before Justices Powers, Aboussie and Kidd]

Affirmed in Part; Reversed and Rendered in Part

Filed: June 26, 1991

[Do Not Publish]


FOOTNOTES




[1] Nor do we believe the following testimony by DUO's employee
amounted to any evidence that the timing of the delivery of the
skylights was consistent with usage of trade:


 Q. Are you testifying here today you received approval
to send [the skylights]?


 A. I received approved drawings.


 Q. Approved drawings, but approval to send material to 
the job site?


 A. That's what it means when we get approved drawings. 
I've checked it over, this is what they need. It has to
be there before that scheduled date so that job is not
delayed. [sic]


 Q. That's the way you're interpreting that?


 A. That's the way that it's done.


The foregoing indicates merely that receipt of the contractor's
approval of the drawings means that the manufacturer must deliver
the goods before the scheduled date. Nothing in the testimony
suggests what constitutes an appropriate delivery date if none is
fixed expressly.


Nor do we find any evidence describing industry custom with respect
to the proper delivery date in the following testimony by the same
employee:


 Q. And where--Who manufactured [the skylights]?


 A. Dawn Products in Colorado.


 Q. And were [the skylights] shipped to Lubbock, Texas
and then on into Angelo State?


 A. No, they ship directly to job site.


 Q. From Colorado?


 A. From Colorado.


 Q. Now, is this customary in the trade--


 A. Yes.


The above testimony recites merely that it is customary to ship the
goods directly from the place of their manufacture to the job site,
but does not address timing of delivery.